# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1207

_____

Aaron Norgren

*Plaintiff - Appellant*

v.

Minnesota Department of Human Services; Jodi Harpstead, Commissioner, in her individual capacity

*Defendants - Appellees*

_____

No. 23-1208

_____

Joseph Norgren

*Plaintiff - Appellant*

v.

Minnesota Department of Human Services; Jodi Harpstead, Commissioner, in her individual capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 14, 2023
Filed: March 21, 2024
_____

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Joseph Norgren and his son Aaron Norgren brought Title VII discrimination and retaliation claims against the Minnesota Department of Human Services ("DHS"), their employer, and 42 U.S.C. § 1983 First Amendment retaliation and compelled speech claims against DHS Commissioner Jodi Harpstead. Their suits stem from the denial of their religious exemption requests to workplace trainings on racism and gender identity. The district court dismissed the Norgrens' complaints for failure to state a claim. Because Aaron plausibly pled that he was denied a promotion due to his protected activities, we reverse the dismissal of his Title VII discrimination and retaliation claims. We affirm the dismissal of the other claims.

## I. BACKGROUND

We take the facts from Joseph's and Aaron's complaints. Joseph and Aaron are both Christians who worked at DHS. Joseph was employed for 27 years as a security counselor with the Security Hospital, which is now known as the Forensic Mental Health Program. Aaron, who continues to work at DHS, has served as a security counselor with the Forensic Mental Health Program for nine years. Aaron left DHS to serve in the U.S. Army Special Operations for four years but returned to DHS after his service. Neither Aaron nor Joseph have ever received any complaints related to their work performance.

On October 12, 2018, Joseph was working an overnight shift at the Security Hospital when his direct supervisor, Luke Pherson, asked him how many genders exist. Joseph responded that he believed two exist based on his knowledge of DNA

and biology. Pherson then angrily told Joseph that "his God" made them that way and Joseph could be fired for the way he thought and spoke. The Norgrens alleged that after this incident, they noticed a difference in the way they were treated at work.

Nearly two years later in August 2020, Joseph received an email from one of his supervisors, Paul Ploog, instructing him to complete workplace trainings titled, "How to be Antiracist (CRT Training)" and "Understanding Gender Identity and Expression: Moving Beyond the Binary." Aaron received an email from Pherson instructing him to complete the same trainings. The Norgrens alleged that Commissioner Harpstead directed DHS supervisors to promulgate the trainings. Commissioner Harpstead also emailed employees that the trainings were necessary to foster "brave conversations" and "change . . . minds for life" and DHS Assistant Commissioner Karen McKinney told employees that "we need all of you to do this."

The Norgrens alleged that the trainings instructed employees to speak or refrain from speaking on certain political and ideological matters. For example, the trainings mandated a minute of silence for George Floyd. They also directed employees to stop using the phrase "I am not a racist" as a defense, to admit to a specific definition of the word "racist," to confess to racist policies they supported, and to accept that the United States is the root of racist ideas. The Norgrens alleged the gender identity training instructed them to refrain from telling others that their gender identities are wrong. The Norgrens opposed the racism training as violative of the traditional view of equality under Title VII, and they opposed the gender identity training as contrary to their sincerely held religious beliefs.

On September 10, 2020, Joseph expressed his opposition to the gender identity training to Ploog and sought a religious exemption. He was directed to notify various other DHS officials about his request. Joseph then emailed Ploog on October 6, 2020, informing him that he planned to retire on January 6, 2021. He made no mention of the trainings in his planned retirement email. A human resources official responded two days later, congratulating Joseph on his retirement

and connecting him with DHS employees who would help him with the retirement process.

On October 27, 2020, the Director of Equal Opportunity and Access Division, Zecharias Hailu, informed Joseph via email that his request for a religious exemption was denied. Joseph asked whether he could appeal the decision, and Hailu replied there was no appeal. In a November 2, 2020, email, Joseph told Hailu that the denial of his religious exemption "solidified and confirmed" his contemplation of leaving DHS and stated it was "unfortunate" he was "forced to prematurely separate from State of Minnesota service." Joseph then filed a charge of discrimination with the EEOC on June 26, 2021.

Aaron expressed opposition to both trainings to his direct supervisor Robert Schweisthal and to Joseph's supervisor Pherson. He too asked for an exemption from both trainings and was denied by Hailu with no right of appeal. Aaron alleged that DHS then denied his request for a day off for inclement weather, even though such requests were usually granted. While DHS permitted Aaron to take the requested leave retroactively one month later, Patrick Patterson from human resources maintained that the denial was appropriate.

In February 2021, Aaron applied for a temporary group supervisor assistant position. To qualify for this position, applicants were preferred to have the following qualifications:[1]

> Minimum of one year lead work or professional experience in a secure environment providing counseling, rehabilitative patient care, or direction of client care programs for patients committed as sexual psychopathic personalities, sexually dangerous persons, mentally ill and dangerous, or with developmental disabilities who present a risk to public safety.

---

[1]These qualifications, while not comprehensively pled in Aaron's complaint, were properly considered by the district court in their entirety. See Kushner v. Beverly Enters. Inc., 317 F.3d 820, 831 (8th Cir. 2003).

-4-

OR

•Minimum of one year supervisory experience in a secure environment providing direct supervision of security or patient/client care programs to patients/clients committed as sexual psychopathic personalities, sexually dangerous persons, mentally ill and dangerous, or with developmental disabilities, who present a risk to public safety

And/or

•A Bachelor's Degree in Criminal Justice, Law Enforcement, Rehabilitation Therapy, Health Sciences, Behavioral Sciences or a related field may be substituted for 6 months of experience at this level OR one year of supervisory experience may be substituted for a maximum of 6 months of experience at this level. (NOTE: Supervisory experience does not need to be within a secure environment).

And/or

•An equivalent combination of the above

Aaron alleged he met the minimum qualifications for the position and was accepted for an interview but could not attend because of scheduling conflicts. However, DHS Administrative Operations Director Ted Wondra encouraged Aaron to apply for the permanent position once it was posted.

The permanent position was posted in June 2021. To qualify for this position, applicants were required to have the following qualifications:[2]

•A minimum of one year supervisory experience in a secure environment providing direct supervision of security or patient/client care programs to patients/clients committed as sexual psychopathic

---

[2]Aaron did not plead the permanent qualifications in their entirety in his complaint, but the district court properly considered them. See Kushner, 317 F.3d at 831.

personalities, sexually dangerous persons, mentally ill and dangerous, or with developmental disabilities, who present a risk to public safety;

OR

•A minimum of two years leadwork or paraprofessional experience in a secure environment providing counseling, rehabilitative patient care, or direction of client care programs for patients committed as sexual psychopathic personalities, sexually dangerous persons, mentally ill and dangerous, or with developmental disabilities who present a risk to public safety.

**A Bachelor's Degree in Criminal Justice, Law Enforcement, Rehabilitation Therapy, Health Sciences, Behavioral Sciences or a related field may be substituted for 6 months of experience at this level OR one year of supervisory experience may be substituted for a maximum of 6 months of experience at this level. (NOTE: Supervisory experience does not need to be within a secure environment).

OR

•An equivalent combination of the above.

Aaron pled that he had been previously considered for other positions throughout DHS with the same minimum mandatory, not preferred, qualifications; therefore, he applied for the permanent position using the same resume he submitted for the temporary position.

On June 25, 2021, Aaron filed a discrimination charge with the EEOC based on DHS's denial of his prior request for a day off. Three weeks later, Patterson told him he was ineligible to interview for the permanent position because he failed to satisfy the minimum qualifications. On November 8, 2021, Aaron submitted an amended EEOC charge.

The EEOC issued Joseph and Aaron right to sue letters and they brought individual lawsuits alleging, in relevant part, Title VII claims for discrimination and retaliation against DHS and 42 U.S.C. § 1983 claims for First Amendment retaliation

-6-

and compelled speech against Commissioner Harpstead. The district court granted DHS and Commissioner Harpstead's motions to dismiss all claims, and the Norgrens timely appealed. We consolidated the cases on appeal.

## II. DISCUSSION

We review a district court's dismissal of a complaint *de novo*, accepting the factual allegations as true and granting all reasonable inferences in favor of the non-moving party. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We will not assume the truth of a legal conclusion "couched as a factual allegation." Id.

### a. Title VII Retaliation – Aaron

Aaron appeals the dismissal of his Title VII retaliation claim against DHS. "To establish a prima facie case of retaliation, an employee must show that he engaged in protected activity; he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination; and there is a causal connection between the protected activity and the adverse action." Gibson v. Am. Greetings Corp., 670 F.3d 844, 856 (8th Cir. 2012). Given that this "prima facie model is an evidentiary, not a pleading standard," Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016), the complaint's allegations must only "give plausible support" to these elements, Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 372 (8th Cir. 2017).

If the employee establishes a prima facie case at summary judgment or trial, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. Schottel v. Neb. State Coll. Sys., 42 F.4th 976, 983 (8th Cir. 2022). If the employer meets this burden, the burden shifts back to the employee to provide evidence of pretext. Id.

DHS asserts that no causal connection exists because Aaron was objectively unqualified for the promotion. To the extent that DHS is proffering a legitimate non-retaliatory reason for its conduct, Aaron does not need to defeat the claim on the face of his complaint because the burden-shifting framework is not appropriate at the motion to dismiss stage. See id. Importantly, Aaron never alleged that DHS rejected him because he was not qualified. Drawing such an adverse inference from the qualifications themselves would turn the deferential Rule 12(b)(6) standard on its head. While the qualifications for the two positions may be open to interpretation, any doubts about their meaning must be construed in Aaron's favor at this stage of the litigation.

Regardless of whether Aaron satisfied the technical requirements of the qualifications, he alleged that he had worked at DHS for nine years and had been previously considered for positions with the same required qualifications in the past. Aaron alleged that he met the qualifications for both positions, that he was declined an interview after he filed his EEOC charge, and that DHS deviated from its past practice in choosing not to interview him. His complaint is sufficient to raise a plausible inference of discrimination. His claim is further bolstered by the timing, as only three weeks elapsed between the protected conduct and the adverse action. Wilson, 850 F.3d at 373 (stating a "six-week period between the EEOC charge and the termination plausibly alleges a but-for causal connection" in claim of Title VII retaliation).

While DHS argues that Aaron's complaint is deficient because he did not allege any decisionmaker at DHS had knowledge of his protected activities, this is a fact-intensive inquiry appropriate at the summary judgment stage, particularly when Aaron may not even know who the decisionmaker was at this juncture. See Williams v. Tucker, 857 F.3d 765, 769 (8th Cir. 2017). Furthermore, the purpose of filing a charge of discrimination with the EEOC is to give the employer notice. Greenwood v. Ross, 778 F.2d 448, 450 (8th Cir. 1985). And the EEOC is required to serve a notice of the charge on the employer within 10 days of its filing. 42 U.S.C. § 2000e-

5(b).  Since Aaron pled that he filed an EEOC charge on June 25, 2021, we can reasonably infer that DHS had knowledge.

Aaron also alleged that DHS retaliated against him by denying him a day off after he filed his original EEOC charge.  While DHS contends that Aaron waived this argument by not raising it before the district court, we need not address the contention because Aaron otherwise stated a claim for Title VII retaliation.

### b. Title VII Discrimination – Aaron

Aaron also appeals the dismissal of his Title VII religious discrimination claim against DHS.  The district court dismissed Aaron's claim because he failed to substantiate his allegation that similarly situated employees outside his protected class were not denied the opportunity for a promotion.

As noted earlier, Aaron plausibly alleged that he was qualified for the temporary and permanent positions and that he had been considered for positions with the same qualifications in the past.  He became eligible to interview for the temporary position and was encouraged by Wondra to apply for the permanent position after he could not make the interview for the temporary position.  Aaron was nevertheless denied an interview for the permanent position three weeks after filing his EEOC charge, despite submitting the same resume he had submitted for the temporary position. DHS's deviation from its past practice, the proximity between the protected activity and the adverse employment action, Aaron's strong employment record and his qualifications, and DHS's failure to offer him an interview despite his eligibility give rise to an inference of religious discrimination. The district court gave too much weight to whether Aaron established the existence of similarly situated comparators because courts generally do not inquire about comparators until the "pretext stage" of the inquiry, which arises at summary judgment.  See McKey v. U.S. Bank Nat'l Ass'n, 978 F.3d 594, 600 (8th Cir. 2020). Because Aaron has plausibly alleged a prima facie case of religious discrimination,

we reverse the dismissal of this claim.  See Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 887 (8th Cir. 2015) (listing requirements).

### c. Title VII Discrimination – Joseph

Joseph appeals the dismissal of his Title VII discrimination claim against DHS.  The parties dispute whether he suffered an adverse employment action.

To prove constructive discharge, a plaintiff must show: (1) "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign," and (2) "he actually resigned."  Green v. Brennan, 578 U.S. 547, 555 (2016).  The analysis involves consideration of "all of the attendant circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Willis v. Henderson, 262 F.3d 801, 809 (8th Cir. 2001).  Stray remarks and statements by non-decisionmakers are not sufficient to establish a claim of discrimination.  Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1126-27 (8th Cir. 2000).

Joseph's factual allegations supporting his claim of constructive discharge include: the 2018 incident in which Pherson questioned him regarding gender and angrily said Joseph's beliefs could get him fired; the difference in treatment Joseph and Aaron experienced after that exchange; and the denial of Joseph's request for a religious exemption from viewing the gender identity training in 2020.  These facts, even if true, are insufficient to state a claim for constructive discharge.  Pherson's 2018 comment was a stray remark made by a non-decisionmaker almost two years before the trainings and the denial of Joseph's exemption.  Joseph did not allege that his experience at DHS was characterized by other similar comments, that it was accompanied by any physical threats, or that it interfered with his work performance.  Joseph's general assertions that he and his son were treated differently do not demonstrate the work environment was objectively intolerable.

In addition, Joseph gave DHS notice of his plans to retire in an email dated October 6, 2020, three weeks before DHS denied his exemption request. His notice did not cite his religious beliefs or the training videos and stated his resignation would be effective January 6, 2021. Joseph's complaint quotes his November 2, 2020, email to DHS which stated that the denial of his religious exemption "solidified and confirmed" his plans to retire. Joseph's allegations are insufficient to state a plausible claim of constructive discharge.

### d. Section 1983 First Amendment Retaliation

The Norgrens also appeal the dismissal of their claim under 42 U.S.C. § 1983 against Commissioner Harpstead for First Amendment retaliation.

Aaron's claim fails because while he pled some facts suggesting that Commissioner Harpstead created and implemented the policy requiring the trainings, he pled no facts supporting his allegation that she personally engaged in promotion discrimination, which is the crux of his First Amendment retaliation claim. He also pled no facts indicating she created or implemented a DHS-wide policy of denying promotions to employees who objected to the trainings. These deficiencies are fatal to Aaron's claim. See Jackson v. Nixon, 747 F.3d 537, 544–45 (8th Cir. 2014).

Joseph's claim fails because he did not plausibly allege that he was constructively discharged and also did not allege Commissioner Harpstead's personal involvement.

### e. Section 1983 Compelled Speech – Joseph and Aaron

As to the Norgren's compelled speech claims under the First Amendment, even if we were to find that they sufficiently pled Commissioner Harpstead's personal involvement in creating and implementing the trainings policy, which remains doubtful, their compelled speech claims are insufficient as a matter of law.

The right to be free from compelled speech is protected by the United States Constitution. Burns v. Sch. Serv. Emps. Union Local 284, 75 F.4th 857, 860 (8th Cir. 2023) (citing Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31, 138 S. Ct. 2448, 2463 (2018)). The First Amendment "bars not only state action which restricts free expression but also state action which compels individuals to speak or express a certain point of view." Gralike v. Cook, 191 F.3d 911, 917 (8th Cir. 1999). To establish a compelled speech claim, the Norgrens must demonstrate there was speech to which they objected that was compelled by some governmental action. Cressman v. Thompson, 798 F.3d 938, 951 (10th Cir. 2015). The third element generally requires proof that Commissioner Harpstead "exact[ed] a penalty" based on the Norgrens' speech, Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 256 (1974), or otherwise "coerce[d]" their acceptance of a particular message, W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 641 (1943).

Here, while the pleadings alleged that the trainings advanced expressive messages that the Norgrens objected to, the Norgrens failed to plausibly allege that Commissioner Harpstead compelled them to adopt those messages as their own speech. There was no allegation that the Norgrens were forced to affirmatively agree with any of the statements in the trainings. There was no allegation that they were threatened with any kind of penalty if they did not observe the minute of silence for George Floyd during the training, if they continued using the phrase "I am not a racist" as a defense after the training, or if they expressed their countervailing viewpoints regarding racism or gender identity in the workplace. The email directing the Norgrens to complete the trainings only told them to watch the videos to the end and then click the exit button. The allegation that Commissioner Harpstead intended the trainings to change minds for life does not by itself demonstrate the required compulsion. See 303 Creative LLC v. Elenis, 600 U.S. 570, 589 (2023) (finding compelled speech when plaintiff was required to speak as the State demanded or face sanctions for expressing her own beliefs, including compulsory remedial training, compliance reports, and monetary fines).

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of Aaron's Title VII discrimination and retaliation claims against DHS, and affirm the district court's dismissal of the remaining claims.

———————————————